**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| POLYTEK DEVELOPMENT CORP., | : | |
| Plaintiff | : | |
| | : | 19-cv-5943-JMY |
| v. | : | |
| | : | |
| 'DOC' JOHNSON ENTERPRISES, | : | |
| Defendant. | : | |

**MEMORANDUM**

**YOUNGE, J.**                                                              **March 31, 2021**

Currently before the Court is the Defendant's Motion to Dismiss for Improper Venue and/or Forum *Non Conveniens* or, In the Alternative, for Transfer to the Central District of California Pursuant to 28 U.S.C. § 1404(a) ("Motion," ECF No. 13). Defendant moves to dismiss or transfer this matter based on improper venue pursuant to 28 U.S.C. § 1406(a) and Federal Rule of Civil Procedure 12(b)(3). Defendant also moves to dismiss or transfer this action based on forum *non-conveniens* and 28 U.S.C. § 1404(a). Having found the matter appropriate for disposition without oral argument the Court will deny Defendant's Motion.

## I.   BACKGROUND:

### A.   Procedural History

Plaintiff filed its Complaint in this matter on December 17, 2019. (Compl., ECF No. 1.) In the Complaint, Plaintiff avers that jurisdiction and venue are proper in the Eastern District of Pennsylvania as follows:

> This Court is the proper venue pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District. Moreover, Defendant consented to and submitted itself to the exclusive jurisdiction of the courts located in either Northampton County, Pennsylvania or the Eastern District of Pennsylvania pursuant to the Terms and Conditions of Sale referenced on each invoice issued to Defendant by Plaintiff.

(Compl. ¶ 4.)

> **B.    Factual Background**

Defendant, 'Doc' Johnson Enterprises, is a Delaware Corporation with its principal place of business in North Hollywood, California.  (Declaration of Chris Youssef ("Youssef Decl.") ¶ 5, Motion Ex. A, ECF No. 13-2.)  Defendant is in the business of manufacturing and selling adult, sexually oriented novelties.  (*Id.* ¶ 6.)  Plaintiff is a New Jersey corporation with its principal place of business in Easton, Pennsylvania.  (Compl. ¶ 1.)  Plaintiff manufactures specialty polymers that Defendant uses in production of its adult novelty items.  (Compl. ¶ 5.)

The parties have a longstanding relationship dating back some twenty years to a point in time when Defendant purchased raw materials from a company that was ultimately acquired by the Plaintiff.  (Youssef Decl. ¶ 9.)  Over the years, the parties had established a course of conduct for the purchase and supply of raw materials used in the production of Defendant's novelty items.  (*Id.* ¶ 12-14.)  The Defendant would forward a Purchase Order to Plaintiff, and this Purchase Order would denote the specific quantity and type of materials to be shipped.  (*Id.*)  Upon receipt of the Purchase Order, the Plaintiff would forward raw materials to Defendant in Hollywood, California.  (*Id.*)  Along with the raw materials, Plaintiff would also forward an Invoice showing the amount owed for the raw materials.  (*Id.*)

Defendant would not pay the balance on each Invoice separately; rather, it would pay off multiple Invoices in one payment.  (*Id.* ¶ 9, 13-15.)  Plaintiff extended credit to Defendant in this manner.  At issue in this litigation are unpaid Invoices for shipments that were made between November 2018 and November 2019.  (Affidavit of Wendy Laughlin ("Laughlin Aff." ¶¶ 4, 8, Pl.'s Opp. Ex 1., ECF No. 15-1.)  Plaintiff attached as Exhibits to the Complaint no less than 115 Invoices that it avers were forwarded to Defendant between November 2018 and November

2019 for raw materials that were shipped to Defendant pursuant to Purchase Orders that it issued nearly twice a month.  (Invoices, Compl. Ex. C; Laughlin Aff. ¶¶ 4, 8.)  Plaintiff avers that the total amount on the unpaid Invoices for the Purchase Orders shipped is $726,540.36.  (Laughlin Aff. ¶ 9.)

Each Invoice forwarded to Defendant contained a statement that sales transactions are subject to Polytek's Standard Terms and Conditions of Sale.  (*Id*. ¶ 10.)  The statement reads, "All sales are subject to Polytek Development Corp. Standard Terms and Conditions of Sale that can be referenced at www.polytek.com/about-us/policies-terms/terms-conditions-of-sale."  (*See*, *e.g.*, Invoices p. 72 (ECF pagination).)  The Terms and Conditions of Sale ("Polytek T&C") contain a "Governing Law/Choice of Venue" clause.  (Polytek T&C, https://www.polytek.com/terms-conditions-sale (last visited March 22, 2021).)

Defendant avers that at some point after this litigation was filed, it became aware of the statement at the bottom of the Invoices that incorporated by reference the Polytek T&C.  (Youssef Decl. ¶ 36.)  Defendant alleges that upon learning of this statement, its attempt to access the Polytek T&C via the web address provided at the bottom of the Invoice produced a "'Page not found' response on [Polytek's] website."  (Def.'s Br. p. 4, ECF No. 13-1; *see also* Youssef Decl. ¶ 36.)  Attached to the Youssef Declaration is a printout of a "Page not found" response from the Polytek website.  (Youssef Decl. Ex. J.)  At the bottom of the Polytek website page containing the "Page not found" response is a list of links to several other Polytek website addresses, including one to the Polytek T&C.  (*Id.*)  When selected, that link produces the Polytek website page containing the Polytek T&C, which include the "Governing Law/Choice of Venue" provision.  (*See* Polytek T&C, *supra*.)  The "Governing Law/Choice of Venue" provision states as follows:

**Governing Law/Choice of Venue**
Your order and all payments are being made to Polytek®'s headquarters in the Commonwealth of Pennsylvania, and the terms and conditions of your transaction (along with all rights, duties and obligations arising hereunder) shall be construed, interpreted and enforced in accordance with the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law rules that would necessitate the application of the laws of any other jurisdiction.  You also agree that any claim or action relating in any way to your order (except actions in which Polytek® seeks equitable relief) shall be brought in the Court of Common Pleas of Northampton County, Pennsylvania, or if based solely upon federal law, in the United States District Court for the Eastern District of Pennsylvania. You hereby submit to the exclusive jurisdiction of said Courts. Furthermore, you agree that venue in said Courts shall be proper in all respects and covenants not to assert any defense or objection to the venue of said Courts.

(*Id.*)

## II.    DISCUSSION

Based on the following analysis, the Court finds that the above-referenced choice of law and forum selection provision is valid, enforceable, and binding on Defendant in this action.

### A.    <u>The Parties Are Bound by a Valid and Enforceable Forum Selection Clause</u>

In order to enforce a forum selection clause, it must first be determined that the clause is valid and that the litigation at issue falls within the scope of the clause.  Federal law, not state law, is applied to the validity of a forum selection clause in a federal diversity action.  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877-878 (3d Cir. 1995).  Forum selection clauses are *prima facie* valid and should be enforced unless enforcement is shown to be unreasonable under the circumstances.  *See M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 16-17 (1972); *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991).

To overcome a presumptively valid forum selection clause, the party objecting to it must make a "strong showing" that the clause is unreasonable by demonstrating: "(1) that it is the result of fraud or overreaching; (2) that enforcement would violate strong public policy of the forum; or (3) that enforcement would . . . result in jurisdiction so seriously inconvenient as to be

unreasonable." *Moneygram Payment Sys. V. Consorcio Oriental, S.A.*, 65 F. App'x. 844, 846 (3d Cir. 2003). To rise to the level of unreasonableness, the objecting party must show more than "mere inconvenience or additional expense." *Banc Auto, Inc. v. Dealer Servs. Corp.*, No. 08-3017, 2008 U.S. Dist. LEXIS 67514 (E.D. Pa. Aug 28, 2008).

Defendant primarily attacks the forum selection clause by arguing that it did not assent to the terms and conditions therein. It cites to the Uniform Commercial Code § 2-207 and argues that the Polytek T&C referenced in the Invoices could not become part of the contract formed by the Purchase Orders because incorporation of the forum selection clause would materially alter the agreement. (Def.'s Br. p. 16.) Defendant argues that this material alteration would result in unfair surprise because the parties never discussed or negotiated the terms of the forum selection clause that Plaintiff attempted to add after the fact by forwarding its Invoices. (*Id.* at 16-17.)

Defendant further argues that it should not be bound by the forum selection clause because it did not appear on the face of the Invoices, but was incorporated by reference to Plaintiff's website which did not clearly display the Polytek T&C. (Def.'s Reply p. 6-7, ECF No. 17). Defendant cites to the fact that recent attempts to access the Polytek T&C via the internet after this litigation was instituted resulted in a "Page not found" message. (*Id.*) Therefore, it argues that it cannot be bound by a forum selection clause that was not readily ascertainable. Finally, Defendant argues that the forum selection clause is entirely unreasonable and would cause hardship because the raw materials in this instance were shipped within the state of California. (Id.)

Contrary to Defendant's argument, the nature and circumstances of the course of conduct presented establishe Defendant's assent to be bound by the forum selection clause.[1]  "The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act."  Restatement 2d of Contracts § 19(1).  Further support for assent by course of conduct can be established by Pennsylvania statute, tracking the UCC, which states the general rule that "a contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." 13 Pa. C.S. § 2204(a).

In the case *sub judice*, Defendant received over 115 Invoices in response to its Purchase Orders at different intervals between November 2018 and November 2019.  After receiving the Invoices, the Defendant continued to place Purchase Orders and receive raw materials from the

---

[1] A forum selection clause contained in an invoice can form a binding contract where the party that received the invoice signed the invoice and returned payment for the goods received. *Jordan Acquisitions Grp. LLC v. Adam Tech. Inc.*, No. 09-542, 2009 U.S. Dist. LEXIS 70765 *5-6 (W.D. Pa. Aug. 12, 2009).  The U.S. District Court for the District of South Dakota found that a forum selection clause contained in an invoice was not a material alteration—or any alteration at all—when there was an extensive course of dealing between the parties, including the repeated exchange of documents containing the disputed language.  *Quality Wood Designs, Inc. v. Ex-Factory, Inc.*, 40 F. Supp. 3d 1137, 1149 (D.S.D. 2014) (noting that courts have found forum selection clauses to be part of a contract "when there is a course of dealing between merchants where forum-selection provisions have been repeatedly sent to a party").  For example, Similarly, in *TSR Silicon Res., Inc. v. Broadway Com. Corp.*, No. 06-9419, 2007 U.S. Dist. LEXIS 92121 *4 (S.D.N.Y. Dec. 14, 2007), the court found that a forum selection clause was part of the agreement—even if it was a material alteration —given the parties' course of dealing.  In *TSR Silicon Res., Inc.*, the objecting party received at least 75 invoices with the forum selection clause during a five-year period; therefore, all parties were on notice and had consented to the terms of the forum selection clause.  *See also Bell, Inc. v. IFS Indus., Inc.*, 742 F. Supp. 2d 1049 (D.S.D. 2010) (forum selection clause did not materially alter the contract where seller repeatedly sent invoices that included terms and conditions that contained a forum selection clause, to which the buyer did not object, which established a course of dealing); *CFMOTO Powersports Inc. v. NNR Global Logistics USA, Inc.*, No. 09-2202, 2009 U.S. Dist. LEXIS 113058 (D. Min. Dec. 4, 2009) (repeatedly sending forms could establish a course of dealings).

Plaintiff.  Defendant retained the raw materials and used those materials to produce its novelty items.  Defendant did not object to the forum selection clause, and it did not return the raw materials that were shipped to California.  Defendant's failure to read the Invoices and examine the Polytek T&C does not invalidate the forum selection clause.  *Smith v. Creative Res., Inc.*, No. 97-cv-6749, 1998 U.S. Dist. LEXIS 18545 *6 (E.D. Pa. Nov. 23, 1998) ("A literate adult may not avoid a contractual obligation on the ground that he did not read or understand the terms of the contract.").

The fact that the forum selection clause appears on Plaintiff's website and is incorporated by reference into the Invoices does not render it invalid.  In addressing the issue of incorporation by reference, another Pennsylvania district court has stated that "internet provisions clearly incorporated by reference [into a purchase order], readily available on the identified internet site, and plainly and clearly set forth therein," are binding even where the party has not read them. *Pentecostal Temple Church v. Streaming Faith, LLC*, No. 08-0554, 2008 U.S. Dist. LEXIS 71878 *5 (W.D. Pa. Sept. 16, 2008); *see also Schwartz v. Comcast Corp.*, 256 F. App'x 515, 520 (3d Cir. 2007) ("It is true that in some cases, a party is excused from the terms of a contract where he never had access to the contract and thus could not make himself aware of its terms.  However, in this case, the terms of the contract were available to Schwartz via the website, and thus they are binding, despite the fact that he was unaware of them."); *Spartech CMD, LLC v. Int'l Auto. Components Grp. N. Am.*, No. 08-13234, 2009 U.S. Dist. LEXIS 13662 *5 (E.D. Mich. Feb. 23, 2009) (rejecting argument that arbitration clause was invalid because it was contained in terms and conditions that party never received, where terms and conditions were contained on party's website and incorporated by reference into a purchase order).

Turning to Defendant's argument that venue in the Eastern District of Pennsylvania is unreasonable, the Court finds this argument without merit. Defendant has failed to show that it would be deprived of its day in court or completely unable to litigate this matter if permitted to go forward in this forum. *Banc Auto, Inc. v. Dealer Servs. Corp.*, No. 08-3017, 2008 U.S. Dist. Lexis 67514, at *9 (E.D. Pa. 2008) (a forum selection clause will be deemed unreasonable where the selected forum is so gravely difficult that the party challenging the forum selection clause would be deprived of their day in court if the clause were enforced).

### B.   Motion to Dismiss or Transfer for Improper Venue Under 28 U.S.C. § 1406(a) and Federal Rule of Civil Procedure 12(b)(3)

The Defendant argues that 1406(a) permits dismissal or transfer of this action because venue is improper. (Def.'s Br. p. 6.) Defendant also cites Rule 12(b)(3) to argue that this matter should be dismissed for improper venue.[2] Defendant cites to the relevant venue statute, 28 U.S.C. § 1391, and argues that Plaintiff has failed to establish the requirements of proper venue. (*Id.*) However, 28 U.S.C. § 1391(b) does not mandate that the Court determine the "best" forum, *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994), or "the forum with the most substantial events." *Superior Precast, Inc. v. Safeco Ins. Co. of Am.*, 71 F. Supp. 2d 438, 444 (E.D. Pa. 1991). Specifically, 28 U.S.C. § 1391(b)(1)-(3) provides in relevant part,

---

[2] Defendant alleged that it was moving to dismiss for improper venue under Federal Rule of Civil Procedure Rule 12(b)(3); however, it failed to brief this issue. Under Rule 12(b)(3), the burden is on the moving party to show that venue is improper. *Bockman v. First Am. Mktg. Corp.*, 459 Fed. App'x 157, 160 (3d Cir. 2012) (citing *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724-25, (3d Cir. 1982)). Importantly, venue must be proper as to each claim. *See, e.g., Cmty. Surgical Supply of Tom's River, Inc. v. Medline DiaMed*, LLC, No. 11-221, 2011 U.S. Dist. LEXIS 82695 *3 (D.N.J. July 27, 2011). In considering a Rule 12(b)(3), motion, a court must generally accept a complaint's allegations as true, unless contradicted by the defendant's affidavits, and a court may consider facts outside the complaint; but all reasonable inferences must be made in the plaintiff's favor. *See Bockman*, 459 Fed. App'x at 158 n.1.

that:

> (b) A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

In the case *sub judice*, Defendant has waived the ability to argue that venue is improper based on the existence of a valid forum selection clause.  Stated in the inverse, the existence of a valid forum selection clause means that the Defendant consented to personal jurisdiction and venue within the Eastern District of Pennsylvania.  Venue is proper "if consented to by the parties in a forum selection clause."  *Aamco Transmissions, Inc. v. Romano*, 42 F. Supp. 3d 700, 706 (E.D. Pa. 2014) (finding venue proper when defendants entered into an agreement with a valid forum selection clause placing venue in the Eastern District of Pennsylvania); *PNC Bank v. Kanaan*, No. 11-7770, 2012 U.S. Dist. LEXIS 70337 *31-36 (E.D. Pa. May 21, 2012) (finding venue proper in the Eastern District of Pennsylvania based the existence of a valid forum selection clause because a defendant may consent to personal jurisdiction and venue by virtue of a forum selection clause); *Provident Mut. Life Ins. Co. v. Bickerstaff*, 818 F. Supp. 116, 119 (E.D. Pa. 1993) (where a forum selection clause exists, its effect on the issue of the appropriateness of venue is essentially identical to its effect on the question of jurisdiction).

C.     **Transfer for Forum *Non-Conveniens* or Pursuant to 28 U.S.C. § 1404(a)**:

Defendant argues that this case should be transferred to the Central District of California Pursuant to 28 U.S.C. § 1404(a).[3]  Section 1404(a) provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  In deciding whether to transfer a case, a court must consider "the private and public interests protected by the language of § 1404(b)."  *Jumara v. State Farm Ins.*, 55 F.3d 873, 879 (3d Cir. 1995).  "[T]here is no definitive formula or list of the factors to consider . . . ." *Id.*

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks omitted).  A transfer, however, "is not to be liberally granted."  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).  Defendants—as movants—bear the burden of establishing the need for transfer, and "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail."  *Id.* (internal quotation marks omitted); *see also Jumara*, 55 F.3d at 879.

A court considering a motion to transfer venue performs a two-part analysis.  First, the court must decide whether the district to which the movant seeks to transfer the case has proper

---

[3]  This Court analyzes the issue of forum *non-conveniens* under 28 U.S.C. § 1404(a).  In *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 60 (2013), the Supreme Court noted that Section 1404(a) is merely a "codification of the forum *non-conveniens* doctrine for a subset of cases in which the transferee forum is with the federal court system."  Section 1404(a) does not apply to cases that call for a non-federal forum.

jurisdiction and venue, *i.e.*, could the case have been brought in the transferee district in the first instance. *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 450-451 (D.N.J. 1999). Second, the court applies a number of public and private factors to determine which forum is most appropriate. *Id.*; *see also Centimark Corp. v. Jacobsen*, No. 11-1137, 2011 U.S. Dist. LEXIS 138673 *6 (W.D. Pa. No. 30, 2011).

The court of appeals in *Jumara* recognized that in analyzing whether transfer is appropriate under § 1404(a), courts have not limited their analyses to the "three enumerated factors in § 1404(a)," and set forth a list of private and public interest factors that a court should consider to determine whether transfer is appropriate. *Jumara*, 55 F.3d at 879-80. The private factors include: the plaintiff's forum preference; the defendant's forum preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Id.* at 879.

The public interest factors include: enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public polices of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-80.

"The weighing of private and public interests under § 1404(a) changes, however, if a forum-selection clause enters the picture." *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017). A forum-selection clause alters the court's analysis in three ways, *i.e.*, the

district court: (1) must give no weight to the forum preferred by "the party defying the forum-selection clause"; (2) must deem the private interests to "weigh entirely in favor of the preselected forum" because the parties agreed to the preselected forum and thereby waived the right to challenge it as inconvenient; and (3) must proceed to analyze only public interests.  *Id.* (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. Of Texas*, 571 U.S. 49, 63-64 (2013)).  "[W]ith these modifications to the typical § 1404(a) analysis, district courts should enforce valid forum-selection clauses '[i]n all but the most unusual cases.'"  *Id.* (quoting *Atl. Marine*, 571 U.S. at 66).

Having found a valid forum selection clause in this instance, the Court will not transfer this matter.  The existence of a valid forum selection clause is a critical factor in assessing the "private interests" that the Court must consider with respect to a motion to dismiss or transfer under Section 1404(a).  *See In re: Howmedica Osteonics Corp.*, 867 F.3d at 402; *Jumara*, 55 F.3d at 879-80 (outlining private interest factors).  Giving substantial weight to the existence of a valid form selection clause, the Court finds that the private factors here do not warrant dismissal or transfer of this action.

The public interest factors do not warrant dismissal or transfer of this matter.  *Id.* 879-890 (outlining public interest factors).  A judgment entered by this Court could be readily enforced by a court located in another jurisdiction.  From an administrative perspective, Defendant has not presented sufficient reasons why this action cannot be litigated in this Court.  Simply stated, "The purpose of § 1404 is not to shift the inconvenience from one party to the other."  *Aamco Transmissions, Inc.*, 42 F. Supp. 3d at 713.

12

III.     **CONCLUSION**

For the foregoing reasons, Defendant's Motion will be denied.  An appropriate order follows.

**BY THE COURT:**


 /s/ John Milton Younge
**JUDGE JOHN MILTON YOUNGE**